UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-21872-CIV-SCOLA

HENRYK SWITALA,

     Plaintiff,

v.

BLANKA ROSENSTIEL,

     Defendants.

_____/

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO AMEND COMPLAINT**

     Defendant, Blanka Rosenstiel ("Rosenstiel"), files this Response to Defendants' Motion to Amend Complaint, and states:

**BACKGROUND**

     Plaintiff filed a "Second Amended Complaint" against Defendants, which was really an initial complaint filed on March 22, 2017 and served on April 28, 2017. [D.E. 1]. Plaintiff alleged that the Defendants failed to pay him overtime due under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and allegedly retaliated against him after bringing an alleged misclassification issue (alleged misclassification as an independent contractor) pursuant to the FLSA's anti-retaliation clause and Florida's Whistleblower Act, and other claims, after which Plaintiff filed a "Third Amended Complaint" (hereinafter referred to "TAC"). Regarding the TAC, Count I was for overtime, Count II was brought under the FLSA's anti-retaliation provision (§ 215(a)(3)), and Count III was a claim brought under the FWA. Notably, the TAC is deficient in many respects which caused Rosenstiel to file a Motion to Dismiss, as it fails to allege Rosenstiel is an enterprise engaged in interstate commerce (she is not, she is just an individual involved in procuring a domestic worker to assist her brother now deceased who had ALS), and the relief that Plaintiff seeks is not relief the FLSA can give, as courts have expressly found:  a) in Count I ¶ 49 Plaintiff sought consequential damages; b) in Count I the alleged misclassification has caused Plaintiff damages in the form of a tax lien because Rosenstiel allegedly failed to pay her share of Plaintiff's Social Security, Medicare, and Florida Unemployment Tax; c) in Count I, sought relief for complaining about misclassification and sought consequential damages; d) in Count III, Plaintiff

sought liquidated damages, which are not allowed under the FWA; and e) Plaintiff sought to incorporate his Statement of Claim into the TAC which seeks all sorts of damages not allowed for in either the FLSA or the FWA, and f) any further requests for relief. *Id.* ¶¶ 28-31, 38-41, *ad damnum* clause after ¶¶ 50, 78, and 87. The Statement of Claim seeks to recover for an IRS tax lien that was collected, lost social security benefits, moving benefits, all sorts of relief under the FLSA which is not provided for in § 216(b) the FLSA's remedial provision. Seeking all of this relief involving the Internal Revenue Service is essentially and attempt by the Plaintiff to turn the FLSA into a statute allowing for equitable relief available in an administrative proceeding before the IRS. Accordingly, the Defendants moved to dismiss the TAC and/or strike relief that is not allowed. *Finnegan v. University of Rochester Med. Ctr.*, 180 F.R.D. 247, 249-50 (W.D. N.Y. 1998); *Johnson v. Oil Express Nat'l, Inc.*, 173 F.R.D. 219, 220 (N.D. Ill. 1977). The Defendant also filed a Supplement because the FWA claim is time-barred on the face of the TAC. The Motion to Dismiss is pending, and Plaintiff chose not to file a timely response.

The "Fourth Amended Complaint" (hereinafter "FAC") contains similar basic allegations as those contained in the TAC (all predicated on an alleged misclassification issue that the Plaintiffs knew about years ago, challenged administratively with the IRS, and lost, with no further avenue for appeal—how the classification, which cannot now possibly be alleged to be a misclassification—could give rise to numerous causes of action constituting an alleged deceptive and fraudulent decision is simply beyond belief. The Plaintiff has either suffered from a momentary lapse of reason, or is filing frivolous claims designed to extort a settlement (which warrants that the instant Motion be denied because one of the *Foman* factors is bad faith). The FAC contains the following substantive counts:  1) FLSA overtime; 2) FDUTPA; 3) 26 U.S.C. § 7434 claim for the issuance of an allegedly fraudulent information return; 4) FLSA retaliation; and 5) Florida Whistleblower Act claim.

The Court should also note that the filing of this lawsuit should come as a bit of a surprise, because Plaintiff knows that he is suing an individual who is not an enterprise engaged in interstate commerce, and a feeble attempt has been made to allege any facts to show that in fact Rosenstiel is such an enterprise—she is not, but rather is merely an individual who procured a couple of domestic workers for her terminally ill brother with ALS. 29 U.S.C. § 203(s). Rosenstiel has not ever and does not currently have gross annual sales volume exceeding $500,000 (she has no gross sales, as she is an elderly lady not in business) and the Plaintiff was not fired in retaliation for any FLSA complaint, but the TAC alleges he was fired for talking to a lawyer. Speaking to a lawyer is not

2

protected by the FLSA, only complaining about overtime and minimum wages is protected.  The Motion to Dismiss in detail sets forth just how poorly thought out this suit was, with respect to numerous claims brought for which civil causes of action do not lie, and remedies sought in the Statement of Claim which are not attainable.

The time to respond to the Motion to Dismiss directed toward the TAC has lapsed, and Plaintiff has failed to timely respond, which warrants a default.  S.D. Fla. L.R. 7.1.  Rather, near the due date of the response, the Plaintiff opted to file the instant Motion to Amend Complaint, attaching the "Fourth Amended Complaint", what is really the Second Amended Complaint.  The sides agree that the Complaint was filed on March 22, 2017.  [D.E. 22].  The FAC is woefully deficient, as set forth herein in detail below, which requires that the instant Motion to Amend be denied.  The motion includes a request for collective action even though the gist of the suit is that Rosenstiel's brother was terminal with ALS and she was attempting to obtain assistance in providing for his care with a domestic care provider (independent contractor), and the brother passed on October 24, 2014, and no workers worked past that date—the FAC alleges Switala stopped working in May 2014.  [D.E. 15-1 ¶ 47 & n.2].  After the Switala stopped working, the only other domestic worker was proposed Plaintiff Brown.  Since the maximum statute of limitations in a FLSA case is 3 years, if there is a willfulness finding, by the time the motion is briefed, and an applicable notice is determined, and mailed out, the statute of limitations period will have ended.  Moreover, the proposed trust Defendant is not a "person" as defined by the FLSA because it is a *charitable* trust not a "business trust" as listed in § 203 and even if it had over $500,000 in contributions annually (as alleged in conclusory fashion in the FAC, though it does not), such contributions do not count toward the $500,000 requirement for an enterprise.  (*See* DOL Questions and Answers *from webinar June 7, 2016*) (stating that income from charitable activities does *not* count towards the $500,000—so contributions, membership dues, in-kind donations, and proceeds from fundraising special events are not counted).  So, 1) there is no one else who could even join, much less someone who could join who worked caring for the brother between August 18, 2014 and October 2014 when the brother passed, and 2) the proposed trust is not liable under the FLSA because it is not a business trust and did not have over $500,000 in gross annual sales volume as required by § 203(r) & (s).  The conclusory statements in the FAC do not render the allegations plausible, because in determining plausibility, such conclusory statements should not be considered.

*American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010).[1]   The conclusory allegations include that the proposed trust Defendant is a "business trust" (FAC ¶ 32), "the annual gross business done by Defendants exceeds $500,000 per year" (FAC ¶ 29), the numerous references that some activity on the part of the Defendants is "fraudulent"—activities are not fraudulent just because they are called "fraudulent", as fraud must be pled with particularity or that in conclusory fashion unfair methods of competition were used or unconscionable acts or practices, and unfair and deceptive acts or practices in conduct of any trade or commerce."   (FAC ¶¶ 63, 121-22, 125).   The raising of those allegations appears to be a tactic to apply leverage by threatening such an action.

## MEMORANDUM OF LAW

### I.   THE LEGAL STANDARDS FOR GRANTING A MOTION TO AMEND A COMPLAINT

The Supreme Court of the United States has held that district courts should not allow pleadings to be amended pursuant to Federal Rule of Civil Procedure 15(a) when the party moving for amendment has exhibited: "undue delay, bad faith or dilatory motive on the part of the movant . . . [or] undue prejudice to the opposing party by virtue of allowance of the amendment, futility of [the] amendment . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, the Plaintiff's Motion to Amend should be denied because the *Foman* factors weigh heavily against granting leave to amend in this case for the reasons previously set forth herein and below (*i.e.*, bad faith, undue prejudice, and futility of the amendment).   Initially, and in short, the undue delay is that the Plaintiffs knew of these claims years ago but are only just now bringing them, the bad faith is demonstrated by the IRS decision not to reverse the classification of the Plaintiffs as independent contractors, forever foreclosing the Plaintiffs from claiming that they were misclassified, and the futility for similar reasons and others as discussed herein.

---

[1] In *Cigna Corp.*, the Eleventh Circuit held that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.* at 1289.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."  *Id.*  The Eleventh Circuit noted that the Supreme Court has recently suggested a two-prong approach to resolving motions to dismiss:  "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"   *Id.*   Importantly, the Eleventh Circuit held that "courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the Court to infer."  *Id.*

There are three main problems with the proposed FAC generally, one is that all counts except Count V incorporate the Statement of Claim filed by the Plaintiff referenced in ¶ 107 of the FAC, and that statement seeks all kinds of damages that are not available pursuant to any statute including all sorts of "damages" that purport to be the consequence of misclassifying the Plaintiff as an independent contractor.  Also, Plaintiffs seek moving expenses pursuant to every count of the FAC, even though they are not allowed in any count.  (FAC ¶ 95).  Further, the FAC, like the TAC, alleges over 2 years ago the tax status/classification of Plaintiff was determined by the IRS (against the Plaintiff), that a tax lien was placed on his property by the IRS, and that he satisfied the lien by the IRS paying approximately $10,000.00 to the IRS.  (FAC ¶¶ 92-93, 73).  Plaintiff seeks these damages in every count except the FWA count but cannot recover them, because an appeal needed to be filed in the Court of Claims within 9 months.  *Gordon v. United States,* 227 Ct.Cl. 328, 649 F.2d 837, 844 (1981) (holding that § 6532(c) "require[s] levy contests [in this court] to be brought within 9 months of [the] levy").  The other troubling concern is that it appears that this lawsuit is filed as an end-run around the IRS's determination as to independent contractor status.  It is bad enough to file a suit seeking to have a statute determine whether payroll taxes should be paid regarding a classification decision (which is not appropriate because only the IRS administratively can determine that via a SS-8 determination, as set forth herein and in the pending motion to dismiss), but quite another to bring such a statute when the IRS definitively resolved the issue and the IRS liens as a result of that decision were satisfied and not appealed (which, frankly, renders the main gravamen of the suit—the misclassification issue—as frivolous).

The second issue with most of the counts is that they are time-barred by the statute of limitations, but the Plaintiff tries to resurrect that time-barring by alleging all over the place equitable tolling should extend the statute of limitations of various statutes, but in conclusory fashion.  Plaintiff's claims regarding equitable tolling are without merit.  The party seeking equitable tolling has the burden of proof, *Menominee Indian Tribe of Wis. v. United States*, ––– U.S. –––––, 136 S.Ct. 750, 755–56, 193 L.Ed.2d 652 (2016), although he need not make any allegations about equitable tolling in his complaint, *see La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), a plaintiff nonetheless can plead himself out of court by alleging facts that foreclose a finding of diligence or extraordinary circumstances, both of which are required for equitable tolling, *see Menominee Indian Tribe*, 136 S.Ct. at 755–56. Plaintiff did so here by alleging facts that prevent him from proving that he was not apprised of his rights years ago, but chose not to file an action, as will be set forth in great detail below.  One stark example would be extending the

5

statute of limitations on overtime claims, but he wrote a letter to a governmental agency seeking his overtime monies as long ago as July 7, 2014 (yes, more than 3 years ago), as shown by an exhibit attached to the proposed FAC. [D.E. 15-1 at 38]. Of course, language from exhibits attached to complaints controls over the language pled in the complaint. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) (stating that "[o]ur duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.") (citing *See Associated Builders, Inc. v. Ala. Power Co.,* 505 F.2d 97, 100 (5th Cir. 1974); Fed. R. Civ. P. 10(c); *Simmons,* 113 F.2d at 813 ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control."). Thus, the bare, conclusory allegations in the FAC that he was misled by the Defendants and did not know his rights are trumped by the letters that belie (really flatly contradict whowing bad faith) those allegations.

The general test for equitable tolling requires the party seeking tolling to prove "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing" of his suit. *Id.* at 755 (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). Although the Supreme Court has stopped short of holding that this test applies in all contexts, *see id.* at 756 n.2, the Eleventh Circuit has applied it in a variety of contexts, *see, e.g.*, *Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc.*, 522 F.3d 1190, 1197, 1200 (11th Cir. 2008) (Railway Labor Act); *Cabello v. Fernandez–Larios*, 402 F.3d 1148, 1154–55 (11th Cir. 2005) (Torture Victim Protection Act); *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (Antiterrorism and Effective Death Penalty Act); *see also Jackson v. Astrue*, 506 F.3d 1349, 1353 (11th Cir. 2007) (requiring extraordinary circumstances in an action under the Social Security Act); *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993) (requiring due diligence in an action under the Public Vessels Act and the Suits in Admiralty Act); *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 970–71 (11th Cir. 2016) (tobacco cases). An extraordinary circumstance is not asking the Defendant and her accountant whether the classification was correct, conclusing it was not, firing off letters to all sort of administrative agencies claiming it was not correct, alerting other domestic workers to this issue, having one of those agencies rule against him, and rather than appeal, satisfy the lien. Those facts, which are the facts as set forth in the FAC and its attachments, do not warrant equitable tolling of any statute.

The third problem is collateral estoppel and bar to proof, particularly the Plaintiffs' appeal of their classification status to the IRS coupled with the IRS's determination that the Plaintiffs were properly classified as independent contractors.  The Plaintiffs brazenly plead that they took the issue of their classification and the issue that the Defendants were committing payroll tax evasion to three governmental entities, the IRS and the DOL (FAC ¶¶ 85-92) (establishing that in 2013 an entire year *outside* of the beginning of the statute of limitations period, and proposed Plaintiff Brown was copied on the communications, see [D.E. 15-1 at 38] (showing proposed Plaintiff Brown and all other co-workers were copied on the correspondence to the DOL and IRS), dated July 2014), and these entities did not find any violation, but the allegations themselves admit that the IRS ruled that the Plaintiff was an independent contractor, by virtue of slapping a tax lien on Plaintiff's property which tax lien Plaintiff *satisfied* instead of appealing it).  (FAC ¶¶ 85-92).  Since an administrative challenge with the IRS is the sole means which an individual can challenge their classification *McDonald v. S. Farm Bureau Life Ins., Co.,* 291 F.3d 718, 722 (11th Cir. 2002) and that administrative finding was against Plaintiff and not appealed, the Plaintiffs are collaterally estopped from relitigating this issue, and it bars most of their claims.

A.      **Counts I and IV- The FLSA Counts**

The FLSA count incorporates the Statement of Claim (see FAC ¶¶ 107 & 108) and there are all sorts of damages and remedies sought in the Statement of Claim for alleged overtime violations that are not provided for or contemplated by § 216(b) (and for which no court in a FLSA case has ever approved),[2] for example, social security monies, refund of tax lien monies that were paid by Plaintiff and not timely appealed and the time to do so has long lapsed,[3] and moving expenses.

---

[2] Although Congress did not expressly state that § 216(b)'s remedies are exclusive, most courts have interpreted them as being so.  *See, e.g., Carter v. Marshall,* 457 F. Supp. 38, 40-41 (D. D.C. 1978) (finding that "[b]ecause the [FLSA] specifically outlines the type of relief available and also provides for liquidated damages, it appears that Congress intended the relief provided to be exclusive"); *Lerwill v. Inflight Motion Pictures, Inc.,* 343 F. Supp. 1027, 1028–29 (N.D. Cal. 1972) ("It should not require resort to Latin maxims of construction to show that the provision of one detailed remedy, which necessarily works to define the substantive right to be enforced, would exclude the possibility of alternative remedies in the absence of a clear showing that Congress intended such alternatives to be provided by judicial construction").

[3] When a third party such as Plaintiff, contests a levy upon its assets by the IRS, this type of action is known as a "wrongful levy claim."  *EC Terms of Years Trust v. United States*, 550 U.S. 429, ---, 127 S.Ct. 1763, 1768 (2007).  The statute of limitations for this type of wrongful levy claim is provided by 26 U.S.C. § 6532(c) (2000).  *Id.* at 1766; *Gordon v. United States,* 227 Ct.Cl. 328, 649 F.2d 837, 844 (1981) (holding that § 6532(c) "require[s] levy contests [in this court] to be brought within 9 months of [the] levy").  Barring a request by the third party for an administrative review of

[D.E. 6]. Additionally, the FAC alleges that "Defendants had a legal obligation under the Internal Revenue Code and the Florida law to deduct all applicable employment taxes from its nurse and domestic service employees' earnings." (FAC ¶ 41). That paragraph is incorporated into all the counts.

Footnote 1 herein supports the conclusion that none of these 3 remedies are potentially available for a proven FLSA violation. Footnote 2 explains how the tax lien monies in particular cannot possibly be a remedy available to Plaintiff. Concerning moving expenses, if these are consequential damages, they may not be obtained.[4] The alleged damages for social security monies (monies that allegedly should have been paid to the government as part of payroll taxes which include monies allocated toward social security) cannot be recovered in any civil action period, and

the levy, a circumstance not alleged here, the third party has nine months to contest an IRS levy on its assets. 26 U.S.C. § 6532(c)(1); *EC Term of Years Trust,* 127 S.Ct. at 1766 n. 1; *Gordon,* 649 F.3d at 844. Plaintiff would have had to bring such a claim in the Federal Court of Claims.

    The IRS levied on Plaintiff's accounts before December 2015, because the FAC alleges in ¶¶ 90-92 that on December 5, 2015, the levies were paid by the Plaintiff. To date, Plaintiff has not filed a wrongful levy claim, but since it is more than 2 years since the levy, the claim would be barred if brought. Statutes of limitations are jurisdictional. *See, e.g., Fed. Nat'l Mortgage Ass'n v. United States,* 469 F.3d 968, 973 (Fed. Cir. 2006) (holding that another Internal Revenue Code statute of limitations was jurisdictional). Because any claim by Plaintiff for wrongful levy claim would be untimely, this Court has no jurisdiction over that claim. For this reason, plaintiff's attempt to bring a wrongful levy claim via the FLSA and other statutes renders the proposed FAC futile.

[4] As stated above, the only relief that is available to a plaintiff suing on behalf of himself under the wage and hour provisions of the FLSA (meaning that the Secretary of Labor has not brought suit on the plaintiff's behalf) is for 1) minimum wage (§ 206) and/or 2) overtime (§ 207). *Aguila v. Corporate Caterers II, Inc.*, 199 F. Supp. 3d 1358 (S.D. Fla. 2016), *aff'd,* -- Fed. Appx -- (11th Cir. 2017); *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 22 (D. D.C. 2010). For an alleged overtime violation, like the one which was attempted to be alleged here, § 216(b) of the Act only provides for overtime, liquidated damages, attorneys' fees, and costs. The case law specifically holds that "consequential" damages are not allowed under the FLSA. The FLSA provides that for violations of its minimum wage and maximum hour provisions, plaintiffs may recover "the amount of their unpaid minimum wages, or their overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The statute also provides that a court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Id.* At least one circuit has held that the companion statute to the FLSA (the ADEA which shares its damages remedy—§ 216(b)), does not allow for consequential damages. *Moskowitz v. Trustees of Purdue University,* 5 F.3d 279, 283 (7th Cir. 1993). *Moskowitz* recently considered the nature and extent of damages permitted under the ADEA, albeit not in conjunction with § 104(a)(2). In *Moskowitz,* a professor brought a ADEA claim alleging that his employer's discriminatory actions deprived him a certain post-retirement income Professor Moskowitz could have earned, if his employer had not discriminated against him before he retired. The court found that the ADEA's remedial provisions did not include the consequential damages sought by the plaintiff.

must be sought from the IRS, but here the enforcement of the tax liens means that the issue has been affirmatively resolved. *McDonald v. S. Farm Bureau Life Ins., Co.,* 291 F.3d 718, 722 (11th Cir. 2002) (holding that FICA does not provide a cause of action for social security or FICA monies and a comprehensive internal administrative mechanism within the IRS provides for such a dispute, noting that like the FLSA, "FICA itself is silent as to whether an employee can sue his employer for proper payment of FICA taxes."). "When an employer misclassifies an employee as an independent contractor, should that employee have the right to sue his employer for failing to withhold and remit payroll taxes to the federal government or should the employee be limited to administrative remedies?" J. Aaron Ball, *The Sea Clammers Doctrine: Reeling In Private Employment Tax Claims In Worker Misclassification Cases,* 1 DePaul Bus. & Com. L.J. 215 (2003). The vast majority of cases that have decided this issue, as well as the Ball article, conclude that the exhaustive regulatory scheme embodied in the IRC, FICA, and the SSA for resolution of employee classification claims forecloses a private right of action for such claims under any statute.

The FAC is also deficient concerning both the individual Defendant and the proposed added trust Defendant concerning whether they are a "person" or "employer" under the statute. The FLSA does not provide for causes of actions against charitable trusts but rather for "business trusts". 29 U.S.C. § 203. While the current individual Defendant is a person for purposes of the statute, she is not an enterprise as set forth below. But the FAC does not contain allegations making it plausible that the trust is a business trust, as it alleges that it is a charitable trust (and it is, it does not raise money, compete with other entities, run business operations of any sort, etc.), but rather is a charitable/familial trust. (FAC ¶ 11). Income from charitable activities does *not* count towards the $500,000—so contributions, membership dues, in-kind donations, and proceeds from fundraising special events are not counted. (*See* DOL Questions and Answers *from webinar June 7, 2016*). There are no non-charitable activities alleged in the FAC that the trust performs, and thus it is not plausible, but rather implausible, that a charitable trust as alleged would be a "business trust" as required by § 203.

Even if the proposed trust Defendant were a business trust, it is not an employer. No caregivers to Ms. Rosenstiel's brother have been utilized since his death in 2014 (and none are alleged to have been). Thus, even if the Plaintiff and proposed Plaintiff Mr. Brown could be considered employees (though the FAC alleges they were independent contractors, though it claims in conclusory fashion that that classification was fraudulent), there is no one to add as a party who could conceivably have a claim within the limitations period, and Plaintiffs cannot provide that the

9

trust or Rosenstiel were enterprises, because the statute is written in the present tense (and enterprise "*has* employees engaged in commerce", etc.

The FAC is also deficient concerning enterprise allegations.  To establish its prima facie case, a plaintiff in a FLSA overtime action must demonstrate that:  (1) the defendant employed them; (2) the defendant is an enterprise engaged in interstate commerce covered by the FLSA; (3) the plaintiff actually worked in excess of a 40–hour workweek; and (4) the defendant did not pay any overtime wages to them.  *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1267 n.68 (11th Cir. 2008) (citing 29 U.S.C. § 207(a)).  Here, the second element is the problem for the Plaintiff.

Under enterprise coverage, an employee is entitled to time-and-a-half overtime pay if he or she is employed by "an enterprise engaged in commerce," as defined by § 203(s) of the statute.  Section 203(s) of the FLSA provides in relevant part that an "[e]nterprise engaged in commerce or in the production of goods for commerce" means an enterprise that:

> (A)(i) *has* employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or material that have been moved in or produced for commerce by any person; and

> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1)(A)(ii) (emphasis added).  Thus, in order for an enterprise to be "engaged in commerce," for purposes of enterprise coverage, a business must have (currently, at the time of suit, because of the present verb tense of the statute) employees handling goods or materials that have been moved in interstate commerce *and* must have annual gross volume of sales or business done in excess of $500,000.  *See* 29 U.S.C. § 203(s)(1)(A)(ii); *Sandoval v. Florida Paradise Lawn Maintenance, Inc.*, 2008 WL 5250274, (11th Cir., Dec. 18, 2008), *aff'g Sandoval v. Florida Paradise Lawn Maintenance, Inc.*, 2008 WL 1777392, *5-6 (S.D. Fla., Apr. 17, 2008).  No allegations suggest this (other than the legal conclusion that both Defendants have gross annual sales over $500,000—but it is not plausible that an elderly individual providing care for her terminally ill brother would have that (who does not work) and the donations that the charitable trust receives (though it does not receive any in the last 3 years) do not count toward the $500,000, so no allegations have been alleged that plausibly support that either Defendant is an enterprise.  Nor could any ever because Rosenstiel is an individual who does not have a business, does not employ others (even assuming Switala and Brown are employees for FLSA purposes which the

Defendant denies, only one was utilized during the statute of limitations period—going back 3 years from today, and thus during May – October 2014, neither the individual Defendant nor the trust employed two or more people as required for enterprise coverage), and does not have gross sales. Accordingly, Counts I and IV are futile, and for that reason the proposed amendment should not be allowed.

Finally, the Plaintiffs do plead for the application of equitable tolling in their *ad damnum* clause to Count I, and apparently pled that the Defendants did not post labor department posters explaining their rights to them in the workplace (as explained, that was not a workplace, but rather people providing services to a terminally ill relative, the fact that they worked a lot of hours over a relatively lengthy period of time does not render them employees—think of a tile guy in a mansion who may work weeks or months laying various tiles because of the size of the project, that does not make such an individual the homeowner's employee), but the Court should reject that application, because 1) the failure to post such information does not per se require equitable tolling and 2) the Plaintiffs already knew of their of their rights way outside of the statute of limitations period [D.E. 15-1 ¶¶ 85-92 and p. 38], and thus *are foreclosed from showing diligence* (which diligence is a prerequisite to equitable tolling) with respect to seasonably filing suit.  Several courts have decisively held that the failure to post the FLSA notice is not grounds to equitably toll the statute of limitations.  *See e.g., Immacula Antenor v. D & S Farms,* 39 F.Supp.2d 1372, 1380 (S.D. Fla. 1999) (holding that because the FLSA poster required by 29 C.F.R. § 516.4 makes no mention of the applicable two-year statute of limitations, failure to post it does not toll the statute of limitations); *Archer v. Sullivan County, Tenn.,* Nos. 95–5214/95–5215, 1997 WL 720406, at *4–5 (6th Cir.1997) (holding that employer's failure to provide required Department of Labor notice of employee's rights under FLSA does not alone provide a basis for equitable tolling).

### B.     Count II - FDUTPA

The FDUTPA claim has several problems.  Initially, a FDUTPA claim, unlike a claim for fraud, requires proof that defendant's act would likely "mislead the [objective] consumer acting reasonably in the circumstances."  *See PNR, Inc. v. Beacon Prop. Mgmt., Inc.,* 842 So.2d 773, 777 (Fla. 2003) (quoting *Millennium Commc'ns & Fulfillment, Inc. v. Office of Att'y Gen.,* 761 So.2d 1256, 1263 (Fla. 3rd DCA 2000)); *Davis v. Powertel, Inc.,* 776 So.2d 971, 974 (Fla. 4th DCA 2000) ("The plaintiff need not prove the elements of fraud to sustain an action under the statute.").  Here, the Plaintiffs have pled themselves out of court because they sent letters many years ago (which predate the statute of limitations period in this case to governmental entities complaining about

their classification and the issue that the Defendants were committing payroll tax evasion to three governmental entities, the IRS and the DOL (FAC ¶¶ 85-92) (establishing that in 2013 an entire year *outside* of the beginning of the statute of limitations period, and *proposed Plaintiff Brown was copied on the communications*, see [D.E. 15-1 at 38], dated July 2014), and these entities did not find any violation, but the allegations themselves admit that the IRS ruled that the Plaintiff was an independent contractor, by virtue of slapping a tax lien on Plaintiff's property which tax lien Plaintiff satisfied instead of appealing it). (FAC ¶¶ 85-92). These findings by the government also require the conclusion that the Plaintiffs are collaterally stopped from relitigating these issues—a jury here cannot find that the classification of the Plaintiffs was a deceptive and unfair trade practice because it was found to be proper by the IRS, but even of not collaterally estopped, the FAC does not plead a claim that is plausible, and that is what renders the conclusion that the FAC is futile.

In Count II, Plaintiffs purport to assert a claim for damages under FDUTPA. FDUTPA is intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Florida Statutes* § 501.202(2). *See also Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.,* 693 So.2d 602, 605-06 (Fla. 2d DCA 1997) (discussing the purpose of FDUTPA in light of its legislative history). A deceptive practice is one that is "likely to mislead" consumers. *Davis v. Powertel, Inc.,* 776 So.2d 971, 974 (Fla. 1st DCA 2000). An unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.' " *Samuels v. King Motor Co. of Fort Lauderdale,* 782 So.2d 489, 499 (Fla. 4th DCA 2001) (quoting *Spiegel, Inc. v. Fed. Trade Comm'n,* 540 F.2d 287, 293 (7th Cir.1976)).

FDUTPA affords civil private causes of action for both declaratory and injunctive relief and for damages. With respect to the recovery of damages, FDUTPA provides:

> In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105. However, damages, fees, or costs are not recoverable under this section against a retailer who has, in good faith, engaged in the dissemination of claims of a manufacturer or wholesaler without actual knowledge that it violated this part.

*Florida Statutes* § 501.211(2). Thus a consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See Chicken Unlimited, Inc. v. Bockover,* 374 So.2d 96, 97 (Fla. 2d DCA 1979); *Gen. Motors Acceptance Corp.*

*v. Laesser,* 718 So.2d 276, 277 (Fla. 4th DCA 1998); *Macias v. HBC of Fla., Inc.,* 694 So.2d 88, 90 (Fla. 3d DCA 1997). The standard for determining the actual damages recoverable under FDUTPA is well-defined in the case law:

> "[T]he measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. [ ... ] A notable exception to the rule may exist when the product is rendered valueless as a result of the defect-then the purchase price is the appropriate measure of actual damages."

*Rollins, Inc. v. Heller,* 454 So.2d 580, 585 (Fla. 3d DCA 1984) (quoting from *Raye v. Fred Oakley Motors, Inc.,* 646 S.W.2d 288, 290 (Tex.App.1983)).

For purposes of recovery under FDUTPA, "actual damages" do not include consequential damages (yet, the FAC seeks such damages). *See Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati,* 715 So.2d 311, 314 (Fla. 4th DCA 1998; *Orkin Exterminating Co. v. Petsch,* 872 So.2d 259, 263 (Fla. 2d DCA 2004). Similarly, the recovery afforded under FDUTPA does not include diminution in value or stigma damages. *Orkin Exterminating Co. v. DelGuidice,* 790 So.2d 1158, 1162 (Fla. 5th DCA 2001). While the typical damages under FDUTPA are set forth, there are some exceptions not applicable to the allegations alleged in the FAC. No actual damages can ever be proven here (which damages are implicitly the cost to the Plaintiffs of the difference between how they ended up financially classified as independent contractors as opposed to had they been classified as employees) because the IRS definitively determined that Plaintiffs were independent contractors by its decision making them pay the full share of employment taxes as previously stated.

First, the provision of care to a terminally ill brother does not constitute involvement in a trade or involvement in commercial activity. Second, the sole alleged deceptive practice is alleged to be the misclassification of the independent contractor Plaintiffs as independent contractors and not employees. While that could conceivably constitute a deceptive or unfair trade practice, here, the allegations of the FAC are bereft of fraud, and merely allege that the Defendants knew or should have known that the Plaintiffs should have been classified as employees and that their accountant's conclusion that the classification was appropriate constitutes fraud. It simply does not, but rather illustrates that the Defendants' belief was that the Plaintiffs were independent contractors, thus showing a simple dispute about it (and the fact that the IRS determined that the Plaintiffs were independent contractors is inherently inconsistent with a finding that it could be plausible that a jury

could find fraud.  A jury cannot, and thus the FAC does not state a claim, because the IRS determined this issue.

Because individual questions predominate, the Plaintiffs' FDUTPA damages claim is unmanageable as a class action.  *See Humana,* 728 So.2d at 266; *St. Joe Co. v. Leslie,* 912 So.2d 21, 24 (Fla. 1st DCA 2005); *Terry L. Braun, P.A. v. Campbell,* 827 So.2d 261, 265 (Fla. 5th DCA 2002).  In order for the circuit court to certify the class on the FDUTPA damages claim, the Plaintiffs have to demonstrate the existence of a "reasonable methodology for generalized proof of class-wide impact and damages." *Execu-Tech Bus. Sys. v. Appleton Papers, Inc.,* 743 So.2d 19, 22 (Fla. 4th DCA 1999); *see also Green v. McNeil Nutritionals, LLC,* 2005 WL 3388158 (Fla. 4th Cir.Ct. Nov. 16, 2005) (denying motion to certify class on FDUTPA claim where a common right of recovery based on the same essential f acts did not exist). In this case, such generalized or class-wide proof does not exist for either causation or damages.  In cases such as this one involving complex contractual arrangements with extended periods of performance, Florida courts have generally declined to approve class certification of FDUTPA claims.  *See, e.g., Chase Manhattan Mortgage Corp. v. Porcher,* 898 So.2d 153 (Fla. 4th DCA 2005) (alleged wrongful assessment of late fees on monthly mortgage payments received on time); *Earnest v. Amoco Oil Co.,* 859 So.2d 1255 (Fla. 1st DCA 2003) (termination of distribution of petroleum products in Leon County to independent distributors and/or station owners commonly known as "jobbers"); *Terry L. Braun, P.A.,* 827 So.2d 261 (treatment by unlicensed dental practitioner); *Execu-Tech,* 743 So.2d 19 (consumer claim for conspiracy to fix and fixing the price of jumbo roll thermal fax paper sold by manufacturers to middlemen and retailers).  Here, Plaintiffs attempt to turn this into a FDUTPA class action should be disallowed, and found to be futile, given the IRS finding and lack of allegations regarding fraud.

### C.  Count III – 26 U.S.C. § 7434

Title 26 U.S.C. § 7434 provides, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." To establish a claim of tax fraud under 26 U.S.C. § 7434, Plaintiff must prove:  (1) Defendants issued an information return; (2) The information return was fraudulent; and (3) Defendants willfully issued a fraudulent information return.  *Seijo v. Casa Salsa, Inc.,* 2013 WL 6184969, at *7 (S.D. Fla.).  While some courts hold that the mere misclassification of an individual and the issuance of an information return consistent with the misclassification cannot ever support a claim under 26 U.S.C. § 7434, *Tran v.*

*Tran*, 2017 WL 894370, at *1 (M.D. Fla.), the better reasoning is that such a claim could potentially form the basis of a suit under the Act because it is a civil remedial statute that is to be construed broadly, and the legislative history makes clear that it was enacted because "[s]ome taxpayers may suffer significant personal loss and inconvenience as the result of the IRS receiving fraudulent information returns, which have been filed by persons intent on either defrauding the IRS or harassing taxpayers." H.R. Rep. No. 104-506, at 35 (1996). Fraudulent information returns can cause "personal loss and inconvenience" to taxpayers whether or not a proper return was required. *Id.* If allegations can be made that clearly set forth that the manner (whether in addition to the wrong amount) in which the information return was issued was fraudulent, which is the prima facie case, a claim, it seems to Defendants, can be established under the Act. *Sigurdsson v. Dicarlantonio*, 2013 WL 12121866, at *8 (M.D. Fla.). The problem faced here by the Plaintiffs is that the IRS has already determined that the Plaintiffs should pay the entire share of the payroll taxes as independent contractors. This precludes a finding that Defendants acted fraudulently, and precludes the issue from being relitigated.[5] Moreover, the Plaintiffs seek to sue both Defendants for this claim, but do not disclose which one issued them the information return.

With respect to the first element, the FAC alleges that a 1099 form was issued to the IRS and Defendants concede that such a form is an information return. (FAC ¶ 133). With respect to the second element, the Plaintiff provides no factual support regarding who was the filer of the alleged fraudulent return form, let alone a knowing filer of a *fraudulent* form. At best, Plaintiffs allege that there were some facts that tend to support the conclusion that they were employees, but the problem is they contested that classification already and lost before the IRS who is the agency in this country that decides such things, precluding a finding of fraud now, and no allegations are set forth suggesting that the Defendants acted with fraudulent intent, merely that they knew or should have known W-2s should have been issued. Even if that were true (though it is not as demonstrated by the IRS's actual finding in the case), the fact that 1099s were provided does not *per se* mean Defendants acted in a matter that was fraudulent.

With respect to the third element, Plaintiff has failed to allege sufficient facts to conclude that either Defendant *willfully* or *fraudulently* issued false returns. While case law in Florida

---

[5] The IRS finding coupled with the relief that the Plaintiffs seek under statutes that do not allow for it poses the ironic issue of a plaintiff being issue precluded from relitigating the classification issue, when the better description is that the Plaintiffs are claim precluded, but pure claim preclusion cannot apply, because the statutes under which Plaintiffs bring their instant claims do not provide for the relief Plaintiffs seek.

discussing the pleading standard for filing fraudulent tax returns under § 7434 is sparse, circuit courts around the country have found that "willfulness" in the context of the statute "connotes a voluntary, intentional violation of a legal duty," and that tax fraud typically requires "intentional wrongdoing." *Vandenheede v. Vecchio,* 541 Fed. Appx. 577, 580 (6th Cir. 2013) (citing *Maciel v. Comm'r,* 489 F.3d 1018, 1026 (9th Cir. 2007); *Granado v. Comm'r,* 792 F.2d 91, 93 (7th Cir. 1986)). Therefore, at the motion to dismiss stage, "the complaint must contain specific allegations supporting a plausible inference that [Defendants] willfully filed false information returns."

While Plaintiffs have provided facts to show they, colorably, may be "employees" under the FLSA entitled to the issuance of W–2 forms, they have failed to include specific facts supporting an inference of scienter, *i.e.*, that Defendants willfully filed fraudulent information returns. Bare assertions that Defendants "knew" the returns to be false, or that Plaintiff requested that Defendants pay him as an employee—without specific facts as to the who, what, when, why or how surrounding the actual filing of returns—does not meet the standard for pleading tax fraud. *Cf. Angelopoulos v. Keystone Orthopedic Specialists, S.C.,* 2014 WL 292578 (N.D. Ill.) (denying motion to dismiss where Plaintiff advanced substantial allegations detailing the willful filing of fraudulent returns; "In his thirty-eight page complaint and in the thirty six pages of attachments (which the Court treats as part of the complaint), Angelopoulos lays out in great detail the exact amounts that he alleges are fraudulent, the way in which he believes that Hall derived these false figures, the date on which Hall and Dubin submitted the fraudulent filing to the IRS, and the motives that Defendants had in submitting them."). Here, the allegations set forth only that there could be a reasonable dispute regarding whether Plaintiffs should have been issued W-2s or not, and such bare allegations alone requires dismissal.

### D.      Count V – The Florida Whistleblower Act Claim

Concerning the FWA claim, that claim is time-barred on the face of the complaint, as it alleges that Plaintiff was fired on August 23, 2013 [D.E. ¶ 15-1 ¶ 74], but the Complaint was not filed until March 22, 2017.  [D.E. 1].  The statute of limitations under the FWA is two years. *Florida Statutes* § 448.103(1)(a).  There can be no question that the Plaintiff thought his discharge was linked to his complaints (though Defendant denies it was) because he was writing to the Wage and Hour Division of the FLSA shortly thereafter.  *Id.* ¶¶ 85-92.  Interestingly, the Wage and Hour Division questioned whether Defendant was an enterprise, as it responded to Plaintiff's inquiry in early 2014 that "[t]he FLSA requires **covered** employers to comply with all provisions of the Act." [D.E. 15-1 at 35] (emphasis in original).  Because this statute of limitations defense is a complete

defense and appears on the face of the pleading, the Defendant respectfully requests that the Court not allow the amendment because it is futile in that it attempts to bring a claim that is time-barred.

Furthermore, the FWA claim is also meritless on the merits.  According to binding case law, in order to establish a prima facie case under the FWA, Plaintiff must demonstrate: (i) his participation in a protected activity (*e.g.*, complaining of something illegal—violation of a law, rule, or regulation); (ii) an adverse employment action occurring thereafter; and (iii) the existence of a causal relationship between the protected activity and adverse action.  *Kearns v. Farmer Acquisition Co.,* 157 So.3d 458 (Fla. 2nd DCA 2015).  Once Plaintiff establishes a prima facie case, the burden shifts to Defendants to proffer a legitimate, non-retaliatory reason for the adverse employment action."  *Id.*  Here, the allegations of the FAC preclude the Plaintiff from proving a good faith belief because the IRS so definitively resolved the issue against him.

###        E.      Certain Remedies

The Plaintiffs also seek remedies not available to them like a declaration that there is a violation of the FLSA (which is equitable relief).  The courts have specifically held that equitable relief in the form of a declaration is not allowed under the FLSA.  *Torres v. Riceup Asian Kitchen*, 2016 WL 6876495 (S.D. Fla.) (dismissing claim for equitable relief).  All equitable relief that a plaintiff seeks (Plaintiff here may argued that all the non-traditional relief he is seeking under the FLSA, *e.g.*, the payment of a tax lien, payment of payroll taxes, unemployment and Medicare taxes is "declaratory relief"—a judicial declaration solely for alleged violations of the FLSA, but under the FLSA, such relief is barred, as noted by *Aguila*.  *Powell v. State of Florida,* 132 F.3d 677 (11th Cir. 1998) (recognizing that "the right to bring an action for injunctive relief under the Fair Labor Standards Act rests exclusively with the United States Secretary of Labor").  The basis for this ruling is based on statutory interpretation.  *See* 29 U.S.C. §§ 211, 217 (from which the conclusion must be drawn that only the Secretary of Labor has authority to seek injunctive relief under the Act).  Third, attempt to sue for the release of a tax lien, for payment of payroll taxes (Medicare, Social Security, and Unemployment) is barred by the doctrine of preemption—the FICA statute has preempted the field and does not allow for an individual to bring an action pursuant to it but rather requires the taxpayer bring a SS-8 action against the employer before the IRS.  *McDonald v. So. Farm Bureau Life Ins. Co.,* 291 F.3d 718 (11th Cir. 2002) (disallowing claims under one federal statute because another federal statute provided for that relief); *Pueschel v. United States*, 369 F.3d 345, 353 (4th Cir. 2004) (affirming dismissal of Federal Tort Claims Act suit as preempted by Title VII of the Civil Rights Act of 1964); *Kendall v. City of Chesapeake*, 174 F.3d 437, 443 (4th Cir.

1999) (holding a § 1983 claim was preempted by the FLSA). Fourth, the fact that the claim is superfluous requires dismissal. *Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007) (stating that the plaintiff's were attempting to evade the FLSA's "unusually elaborate enforcement scheme" simply by suing for quantum meruit thereby attempting to render the FLSA's enforcement mandates superfluous, when they sought the same relief afforded by the FLSA in that count); *Padurjan v. Aventura Limousine & Transportation Serv., Inc.*, 500 F. Supp. 2d 1359 (S.D. Fla. 2007) (dismissing attempt to obtain a declaration that the plaintiff was an employee that could affect his tax status, and noting that the plaintiff cannot get around the fact that he has to prove as part of his case in chief that he was an employee).

Federal law can preempt and thus invalidate state law or other federal laws. Congressional power to preempt state law is derived from the Supremacy Clause of Article VI of the Constitution. U.S. Const. art. VI, cl. 2. The question of whether federal law preempts state law is one of congressional intent. *English v. General Elec. Co.,* 496 U.S. 72, 78-79 (1990).

"Preemption can take on three different forms: express preemption, field preemption, and conflict preemption." *Aux Sable Liquid Prods. v. Murphy,* 526 F.3d 1028, 1033 (7th Cir. 2008) (citation omitted). Field preemption and conflict preemption are forms of implied preemption. *Gade v. Nat'l Solid Wastes Mgmt. Assoc.,* 505 U.S. 88, 98 (1992). Field preemption exists "when federal law so thoroughly occupies a legislative field as to make it reasonable to infer that Congress left no room for the states to act." *Aux Sable Liquid Prods.,* 526 F.3d at 1033 (internal quotation and citations omitted). Conflict preemption "exists if it would be impossible for a party to comply with both local and federal requirements or where local law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Aux Sable Liquid Prods.,* 526 F.3d at 1033 (internal quotation and citations omitted). "A state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach this goal." *Int'l Paper Co. v. Ouellette,* 479 U.S. 481, 494 (1987). Regardless of the form of preemption in question, the "ultimate task in any pre-emption case is to determine whether state regulation is consistent with the structure and purpose of the statute as a whole." *Gade,* 505 U.S. at 98.

Here, these disparate and unusual remedies sought by the Plaintiffs in the FAC are preempted as set forth herein by other statutes and administrative avenues available to handle certain claims and relief.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion.  The Defendants are not saying that the Plaintiffs can never amend, just that this particular motion with the attached FAC should not be allowed for the reasons set forth herein.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 21, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record (Matt Person, Esq.) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

Glasser & Kleppin, P.A.
Attorneys for Plaintiff
8751 W. Broward Blvd.
Suite 105
Plantation, FL 33324
Tel.  (954) 424-1933
Fax  (954) 474-7405
E-mail:  ckleppin@gkemploymentlaw.com

By___s/Chris Kleppin_____
          Chris Kleppin
          Fla. Bar No. 625485

C:/MyDocuments/Rosenstiel/DefResponsetoMtoAmend08/18/17

Whereas a few courts have decisively held that the failure to post the FLSA notice is not grounds to equitably toll the statute of limitations, *see e.g., Immacula Antenor v. D & S Farms,* 39 F.Supp.2d 1372, 1380 (S.D.Fla.1999) (holding that because the FLSA poster required by 29 C.F.R. § 516.4 makes no mention of the applicable two-year statute of limitations, failure to post it does not toll the statute of limitations); *Archer v. Sullivan County, Tenn.,* Nos. 95–5214/95–5215, 1997 WL 720406, at *4–5, 1997 U.S.App. LEXIS 33052, at *13–14 (6th Cir.1997) (holding *698 that employer's failure to provide required Department of Labor notice of employee's rights under FLSA does not alone provide a basis for equitable tolling), Asp v. Milardo Photography, Inc., 573 F. Supp. 2d 677, 697–98 (D. Conn. 2008)